UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                               Case # 23-CR-6109

BRANDON WASHINGTON,                 DECISION AND ORDER

                      Defendant.
_____

## INTRODUCTION

On August 28, 2024, Magistrate Judge Mark W. Pedersen filed a Report & Recommendation ("R&R"), ECF No. 183, in which he recommended denying Defendant Brandon Washington's motions to (1) suppress evidence collected against him pursuant to a search, and (2) suppress statements given during a police interrogation. *See* ECF No. 135. Defendant has filed his objection to the R&R, ECF No. 188, the Government has responded, ECF No. 191, and Defendant has replied, ECF No. 192. For the reasons that follow, the R&R is ADOPTED, Defendant's motion to suppress evidence is DENIED, and his motion to suppress statements is DENIED.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009).

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify the recommendation." Fed. R. Crim. P. 59(b)(3). "As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of that point." *United States v. Willis*, No. 13-CR-6013, 2015 WL 1915123, at *2 (W.D.N.Y. Apr.

1

27, 2015); *see also* Fed. R. Crim. P. 59. ("Failure to object in accordance with this rule waives a party's right to review.").

## DISCUSSION

The Court assumes the parties' familiarity with the factual background of the case. To the extent that a more detailed recounting is needed, the parties are directed to Judge Pederson's comprehensive summary of the facts.

Defendant objects to Judge Pedersen's recommendation to deny two motions: (1) the motion to suppress evidence collected pursuant to search warrants executed at 55 Laser Street and 225 River Street (including cell phones seized at the location); and (2) the motion to suppress statements made by Defendant during a custodial interrogation. ECF No. 188. The Court will address Defendants' arguments below.

I.  **Motion to Suppress Evidence**

   a. **55 Laser Street**

Judges who issue warrants must answer the "commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place," *Illinois v. Gates,* 462 U.S. 213, 230 (1983), and the law recognizes that probable cause "does not demand certainty but only a fair probability that contraband or evidence of a crime will be found." *United States v. Gaskin,* 364 F.3d 438, 457 (2d Cir. 2004). In reviewing a probable cause determination, the Court gives "due weight to inferences drawn from those facts by resident judges and law enforcement officers," *United States v. Wilson,* 699 F.3d 235, 242 (2d Cir. 2012) (internal quotation marks and alterations omitted), as "courts recognize that experience and training may allow a law enforcement officer to discern probable cause from facts and circumstances where a layman might not." *Gaskin,* 364 F.3d at 457. Reviewing courts also "must accord considerable

deference to the probable cause determination of the issuing magistrate." *United States v. Clark,* 638 F.3d 89, 93 (2d Cir. 2011) (quoting *Walczyk v. Rio,* 496 F.3d 139, 157 (2d Cir. 2007)); *see also Gates,* 462 U.S. at 236 ("A magistrate's determination of probable cause should be paid great deference by reviewing courts." (internal quotation marks and citation omitted)).  Suppression should be the "last resort, not [the court's] first impulse." *Herring v. United States,* 555 U.S. 135, 140 (2009).

The affidavit to support a search warrant does not require certainty that the search will be fruitful—rather, the affidavit need only "warrant a man of reasonable caution in the belief" that evidence of a crime will be found. *Texas v. Brown,* 460 U.S. 730, 742 (1983).  Consequently, the facts upon which a police officer bases her conclusions need not show that the conclusion is "correct or more likely true than false"; they need only show that "wrongdoing or the discovery of evidence [is] probable." *Walczyk*, 496 F.3d at 157 (citations omitted).

Judge Pederson determined, and the Court agrees, that law enforcement had probable cause for the search warrant for 55 Laser Street.  In brief, law enforcement knew from the report of a concerned citizen that Defendant had owned a silver Dodge Caliber, that an identical vehicle had been used in connection with the murder of two suspected members of a rival drug gang, and that a silver Dodge Caliber had been found "fully engulfed in flames" in a driveway belonging to the mother of a rival gang leader.  ECF No. 135-1 ¶¶ 19-21.  Law enforcement also knew that Defendant owned 55 Laser Street, that shots had been fired near 55 Laser Street within hours of the abovementioned double murder, and that Defendant's car had recently been shot. *Id*. ¶ 20. Finally, the police had learned from having apprehended Defendant's brother, Jermell Washington, that Jermell was (1) involved with drug dealing, due to evidence seized from a search

on a residence in which Jermell was staying; and (2) that Jermell had, by his own admission, also lived at 55 Laser Street. *Id*. ¶ 22-25.

Defendant argues in his reply that the above facts were insufficient to establish probable cause, disputing that said details demonstrated a direct connection with any wrongdoing. ECF No. 192 at 1-5. However, as Judge Pederson pointed out, such a direct link is not necessary. Rather, when law enforcement seeks a search warrant for a residence, the question is whether the facts "establish[] a sufficient nexus between the criminal activities alleged and [the] residence." *United States v. Singh*, 390 F.3d 168, 182 (2d Cir. 2004). "The nexus does not require direct evidence," *United States v. Billins*, No. 19-CR-6054, 2019 WL 5157028, at *3 (W.D.N.Y. Oct. 15, 2019), and "may be based on reasonable inference from the facts presented based on common sense and experience," *Singh*, 390 F.3d at 182 (internal quotation marks omitted). Even if the cited facts taken individually would not constitute direct evidence, they nevertheless give rise to that sufficient inference of wrongdoing. Given the considerable deference afforded to the issuing magistrate, *Gates,* 462 U.S. at 236, the Court agrees with the finding of probable cause.

Defendant further objects that the warrant for 55 Laser Street was deficient on two grounds. First, Defendant argues that the 55 Laser Street warrant was tainted by a false statement provided in a separate warrant application that law enforcement also submitted in connection to the investigation into Defendant. ECF No. 188 at 4-5. Second, Defendant argues that the issuing magistrate, Judge Caroline Morrison, did not spend sufficient time reviewing the various warrant applications before approving them. *Id*. at 3-4.

The Court does not find either of these arguments persuasive. With regards to the allegedly false statement, Defendant points to an affidavit by Investigator Joseph E. Briganti submitted to

support a search warrant application for 12 Hoff Street.[1] ECF No. 135-4. In this affidavit, Briganti states that an investigation had uncovered evidence connecting Defendant and his associates to an attempted arson. *Id*. ¶ 10. Defendant claims that this statement was "a deliberate attempt to mislead," ECF No. 192 at 5, citing to a different affidavit in support of the search warrant application for 225 River Street, in which the affiant instead concludes that one of Defendant's rivals was responsible for the arson, *see* ECF No. 135-5 ¶ 26. The Government ascribes this discrepancy to a typographical error.[2] ECF No. 191 at 5.

Even assuming that the statement was a purposeful falsehood, however, it is not clear how it would serve to taint the warrant for 55 Laser Street. The statement does not appear in any of the application materials for the 55 Laser Street search warrant, Briganti did not author any affidavit in support of the 55 Laser Street search warrant application, and there is nothing on the record to suggest that Judge Morrison considered Briganti's 12 Hoff Street affidavit when approving the 55 Laser Street warrant. Indeed, the warrants themselves strongly suggest otherwise. Judge Morrison signed the search warrant application for 55 Laser Street at 5:08 A.M. on July 22, 2022, ECF No. 153-1 at 2, and did not swear Briganti on his amended application for the search warrant on 12 Hoff Street until 10:29 A.M. on the same day, ECF No. 135-4 at 12. Judge Morrison therefore, by all appearances, did not encounter the allegedly false statement until more than five hours *after* she had already approved the warrant for 55 Laser Street. Defendant argues that Judge Morrison may nevertheless have somehow been influenced by Briganti's statement, but offers no evidence in support of this speculation.

---

[1] The Government elected to not use the evidence seized from 12 Hoff Street.

[2] Specifically, the Government claims that law enforcement knew at the time of the affidavit that the residence at which the attempted arson took place was a drug house operated by *Defendant*, and therefore police at the time believed that the "arson was clearly committed by [Defendant's] rival," as opposed to Defendant attempting to destroy his own property. ECF No. 191 at 5 n.1.

The Court is even more skeptical of Defendant's argument with respect to the time Judge Morrison spent in approving the search warrant applications. Defendant states that, per the signatures on the warrants, Judge Morrison approved six search warrants (including the warrant for 55 Laser Street) between 5:07 A.M. and 5:29 A.M. on July 22, 2022. *See e.g.* ECF No. 135-2. Defendant argues that "because the total number of pages that Judge Morrison allegedly read in 21 minutes was 65," the timing could suggest Judge Morrison did not read the warrant application for 55 Laser Street in sufficient detail or did not parse the evidence used to support the different warrant applications. ECF No. 192 at 7. The Court is not persuaded by Defendant's assessment of Judge Morrison's reading speed, which relies wholly on speculation.

For the above reasons, Magistrate Judge Pederson's recommendation is ADOPTED and Defendant's motion to suppress evidence seized at 55 Laser Street is DENIED.

### b. 225 River Street

Defendant objects to the magistrate judge's recommendation to deny his motion to suppress evidence taken from 225 River Street, arguing that the time delay between approval of the search warrant and its execution rendered it stale. ECF No. 188 at 5-8. The Court disagrees.

"As a general proposition . . . an affidavit must allege 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.'" *United States v. Pattee*, No. 12-CR-6183, 2013 WL 6579066, at *3 (W.D.N.Y. Dec. 13, 2013) (quoting *Sgro v. United States,* 287 U.S. 206, 210 (1932)). "A warrant may lack probable cause and become 'stale' when the evidence supporting it is not sufficiently close in time to the issuance of the warrant." *United States v. Serrano*, 192 F. Supp. 3d 407, 409 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). "The law recognizes no bright-line rule for staleness, which must instead be evaluated on the basis of the facts of each case." *United States v. Raymonda*, 780 F.3d 105, 114

(2d Cir. 2015) (internal quotation marks and citations omitted). "[F]our factors are generally relevant to whether the police have waited an unreasonable amount of time before seeking a search warrant: [1] the length of the delay, [2] the importance of the seized property to the defendant, [3] whether the defendant had a reduced property interest in the seized item, and [4] the strength of the state's justification for the delay." *United States v. Smith*, 967 F.3d 198, 206 (2d Cir. 2020). "Two critical factors in determining whether facts supporting a search warrant are stale are the age of those facts and the nature of the conduct alleged to have violated the law." *United States v. Ortiz,* 143 F.3d 728, 732 (2d Cir. 1998) (internal quotation marks omitted).

Here, law enforcement executed the search warrant on 225 River Street, which had been approved by Magistrate Judge Payson, on October 3, 2022. ECF No. 135-5. This, as admitted by the Government, was roughly two-and-a-half months after having collected the significant evidence of Defendant's participation in a narcotics conspiracy in June and July of 2022 that formed the basis of the warrant application. ECF Nos. 135-5, 145 at 22. Defendant here "concedes that the issuance of a warrant two months after the facts establishing probable cause is generally acceptable and not considered stale." ECF No. 188 at 6. However, Defendant asserts that there was no evidence of any ongoing criminal activity *during* the two-and-a-half month period, meaning that there was "a period of delay that is nearly the same length of time as the alleged conspiracy with no criminal activity." *Id*. As Defendant argues it, this period without any evidence of criminal activity was sufficient to render the warrant stale. *Id*.

Magistrate Judge Pederson concluded, and the Court agrees, that this gap was not sufficient for a finding of staleness. As Defendant acknowledges, "[n]arcotics conspiracies are the very paradigm of the continuing enterprises for which the courts have relaxed the temporal requirements of non-staleness." *United States v. Rowell*, 903 F.2d 899, 903 (2d Cir. 1990) (alteration and

7

citation omitted).  Defendant nevertheless argues that the lack of evidence for criminal activity during the gap period serves to show staleness.  ECF No. 188 at 7-8.  But if an affidavit "establishes a pattern of continuing criminal activity" such that "there is reason to believe that the cited activity was probably not a one-time occurrence," the gap in time between the last alleged event and the search warrant application is made less significant.  *United States v. Wagner,* 989 F.2d 69, 75 (2d Cir. 1993).  Here, the affidavit submitted in support of the warrant application described at length the evidence of a continuing criminal activity, including information from a confidential informant, evidence of drug dealing seized in the searches of 55 Laser Street and connected drug houses, and so forth.  ECF No. 135-5 at 18-50.  Even if law enforcement could not obtain new evidence during this two-and-a-half month period—the length of which Defendant concedes was not *per se* significant—the evidence presented in the affidavit gave at least reason to believe a pattern of continuing criminal activity existed, which is all that is required to make the gap in time "less significant."  *Wagner*, 989 F.2d at 75.  Moreover, Defendant acknowledges that police kept Defendant under investigation during this period.  The "ongoing nature of the investigation against" Defendant further reinforces that the period that lapsed between June and July 2022 and the issuance of the warrant did not render the warrant stale.  *United States v. Clark*, 565 F. Supp. 3d 381, 393 (W.D.N.Y. 2021) (finding a three-week gap did not render a warrant stale where police conducted a continuing investigation, including surveillance, during that period).

In short, the two-and-a-half month gap, though notable, was not sufficient to find staleness here.  As such, the Court ADOPTS the recommendation and DENIES the motion to suppress the 225 River Street search warrant.

### c. Cell Phone Addendum

Defendant argues that, even if the 225 River Street search warrant is valid, the Government's search and seizure of cell phones found pursuant to the warrant should be suppressed. The cell phones were subject to a search warrant addendum that provided, as relevant here, that the search of cell phones seized at 225 River Street must occur within sixty days of the issuance of the warrant, "unless, for good cause demonstrated, such date is extended by Order of this Court." ECF No. 135-5 at 6. Magistrate Judge Payson signed the search warrant on September 30, 2022, *id*. at 1, but law enforcement did not search the phones until March 15 and 16, 2023, ECF No. 145-1 ¶¶ 8-9. The Government explains that the delay was due to the need for special decryption software, which was not available at the time the phones were seized. ECF No. 145 at 24. The Government initially began its access attempts on October 5, 2022, but only succeeded on March 15 and 16, a day after the new software had been released. ECF Nos. 145 at 24, 145-1 ¶¶ 8-9.

Magistrate Judge Pederson concluded that the Government's need for more advanced decryption software was good cause for the delay, citing to *United States v. Metter*, 860 F. Supp. 2d 205 (E.D.N.Y. 2012) for the proposition that the Government's failure to review the seized cell phones within sixty days did not make the search presumptively unreasonable. ECF No. 183 at 39-40. Defendant argues otherwise, stating that in *Metter* the court granted a motion to suppress where the government "blatant[ly] disregard[ed] its responsibility" to timely review seized cell phones and that the Court should do the same here. ECF No. 188 at 8-9.

Defendant's reliance on *Metter* is misplaced. In that case, the court found that "there is no established upper limit as to when the government must review seized electronic data to determine whether the evidence seized falls within the scope of a warrant." *Metter*, 860 F. Supp. at 215. The

9

important question, the court held, was not merely the length of delayed time but whether the time in which the government "complete[d] its review" was "reasonable." *Id.* (internal quotation marks omitted). *Metter* did not establish a red-line rule that the untimely execution of cell phone search warrant rendered that search unreasonable. The court's decision in *Metter* to suppress cell phone evidence is also distinguishable. In *Metter*, the government delayed in *beginning* a search of the seized electronic documents for several months, for which the court found there was no excuse. The case here is clearly different, as the Government began its attempts to access the cell phones within two days of them being seized, but was delayed in completing their search because they lacked the necessary software. ECF No. 145-1 ¶¶ 8-9. Indeed, the court in *Metter* explicitly stated that a "delay of several months between the seizure of electronic evidence and the *completion* of the government's review of that evidence as to whether it falls within the scope of the warrant is reasonable." *Id.* (emphasis in original).

Review of the record shows that, per the language of the addendum, the Government had good cause to delay its search of the seized cell phones. The authority cited by Defendant does not persuade the Court to the contrary. The Court therefore ADOPTS the recommendation and DENIES the motion to suppress as to the cell phones.

### d. Good Faith Exception

Court further agrees with Magistrate Judge Pederson's determination that, even if the warrants were invalid, the evidence would still be admissible under the good faith exception of *United States v. Leon,* 468 U.S. 897 (1984). In *Leon,* the Supreme Court recognized an exception to the exclusionary rule for "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." 468 U.S. at 922. However, the so-called good faith exception does not apply "(1) where the issuing magistrate has been knowingly misled; (2) where

the issuing magistrate wholly abandoned his or her judicial role; (3) where the application is so lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." *Clark,* 638 F.3d at 100 (citing *Leon,* 468 U.S. at 923). "[T]hese limitations apply not merely in cases of deliberate police misconduct, but also in situations where an officer is reckless or grossly negligent in seeking or executing a warrant." *United States v. Raymonda*, 780 F.3d 105, 118 (2d Cir. 2015). Courts have found that where an affidavit exaggerates or misstates information or evidence, without evidence of deliberate deception, the good faith exception remains applicable. *Raymonda*, 780 F.3d at 120 (applying the good faith exception to a search without probable cause despite reliance on potentially stale evidence and exaggerations and omissions of critical facts in the affidavit); *United States v. Falso*, 544 F.3d 110, 125-28 (2d Cir. 2008) (finding the good faith exception applicable to a warrant lacking probable cause despite alleged misstatements in the affidavit where misstatements were not shown to be made knowingly or recklessly); *United States v. Harris*, 144 F. Supp. 3d 406, 410-12 (W.D.N.Y. 2015) (denying motion to suppress despite inconsistencies between the affidavit and hearing testimony because there were no grounds to conclude that the agent intentionally or recklessly misrepresented).

      The good faith exception applies to both warrants. Defendant does not argue in his objections as to whether the good faith exception applies to the 55 Laser Street warrant, but there is no indication in the record that any of the four circumstances in which the exception fails to apply are relevant here. As provided above, the Court is unconvinced that Briganti's alleged misrepresentation in the 12 Hoff Street affidavit had any influence on the decision to issue the 55 Laser Street warrant. Even if the Court assumed as much, Defendant provides nothing to suggest that this was an attempt to knowingly mislead the issuing magistrate, as opposed to a mere

typographical error.  As for 225 River Street, Defendant's only arguments as to why the good faith exception does not apply is that the warrant relied on stale information and was untimely as to the cell phone addendum.  As already stated, the Court does not find either argument persuasive as to whether the warrant was valid, and is equally skeptical that they can overcome the good faith exception.

Accordingly, the Court ADOPTS the recommendation as to the good faith exception.[3]

## II.     Motion to Suppress Statements

Defendant further objects to Magistrate Judge Pederson's recommendation to deny the motion to suppress statements Defendant made during a custodial interrogation.  The parties here do not dispute that the custodial interrogation took place, nor the timing of it—the Government had filed a criminal complaint against Defendant on September 30, 2022, arrested Defendant on October 3, 2022 and brought him to the police station.  ECF No. 135 ¶ 127.  Magistrate Judge Pederson concluded—and this Court agrees—that Defendant's Sixth Amendment right to counsel had not triggered at this stage because Defendant had not yet made an initial appearance before a judicial officer to learn of the charges against him.  ECF No. 183 at 42 (citing *Rothgery v. Gillespie County*, 554 U.S. 191, 213 (2008)); *see also Clark v. Cunningham*, No. 09-CV-3578, 2014 WL 1399416, at *21 (E.D.N.Y. Apr. 10, 2014) ("Adversary judicial proceedings can include a formal charge, preliminary hearing, indictment, information, or arraignment." (internal quotation marks

---

[3] Defendant argues that, in the alternative, the Court should grant a hearing to determine the validity of the search warrants.  The Court disagrees.  The standard to obtain such a hearing is well settled, and a defendant is entitled to such a hearing where he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks v. Delaware,* 438 U.S. 154, 155-56 (1978).  "The ultimate inquiry is whether, after putting aside erroneous information and material omissions, there remains a residue of independent and lawful information sufficient to support probable cause." *United States v. Canfield,* 212 F.3d 713, 718 (2d Cir.2000) (quotation marks omitted).  As previously stated, the Court is not convinced that any false statement was knowingly, intentionally, or recklessly made, and therefore Defendant is not entitled to a hearing.

omitted)). Typically, then, Defendant's custodial interrogation would not implicate his Sixth Amendment right to counsel until "at or after the initiation of adversary judicial criminal proceedings." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); *see also United States v. Moore,* 670 F.3d 222, 234 (2d Cir. 2012) (noting that "arrest on a warrant, even one issued pursuant to a criminal complaint sworn out by prosecutors," does not trigger Sixth Amendment right to counsel); *United States v. Duvall*, 537 F.2d 15, 22 (2d Cir. 1976) ("We see no reason in principle why the filing of a complaint should be deemed to give rise to a right to counsel immediately upon arrest pursuant to warrant.").

Defendant raises two objections as to suppression of his statements. First, Defendant argues that because he was represented by counsel in another matter also involving the police, law enforcement were on notice that he had counsel who, in turn, should have been present. ECF No. 188 at 12-13. On July 30, 2022, Defendant's home was destroyed in an arson and, pursuant to this, a police investigator met with Defendant and his attorney on September 20, 2022 (ten days prior to his arrest) for an ownership deposition. *Id*. at 12.

Defendant and the Government argue in their briefing as to whether the ownership deposition was "related" or "unrelated" to the larger criminal investigation against Defendant, and therefore whether police should have constructively known that Defendant's counsel ought to have been present. *See* ECF Nos. 188 at 12-13, 191 at 12, 192 at 12-13. But as Magistrate Judge Pederson points out, the Sixth Amendment right to counsel is fundamentally "offense specific, meaning that even when the right to counsel attaches for one offense, that does not mean that the defendant has a right to counsel for all ongoing criminal investigations." *United States v. Moore*, 670 F.3d 222, 235 (2d Cir. 2012) (internal quotation marks omitted). Whether the ownership deposition was factually related to the criminal investigation is not the question because, even if

13

they were, Defendant's Sixth Amendment rights had not yet attached. *See United States v. Shvartsman*, 722 F. Supp. 3d 276, 306 (S.D.N.Y. 2024) (holding that although defendant "retained counsel prior to the Indictment," retaining counsel "was insufficient to trigger" the Sixth Amendment).

Defendant's second objection, however, is that his attorney had notified the police that Defendant would retain his counsel for the criminal investigation as well. Defendant alleges that, upon his arrest on October 3, 2022, his counsel emailed AUSA Douglas Gregory at 10:40 A.M. to inform him that Defendant was his client and to "tell the agents not to speak to him." ECF No. 152-1. Gregory replied at 12:16 P.M. to confirm that the police had arrested Defendant. *Id*. However, police had already interrogated Defendant before Gregory replied. At oral argument, Gregory indicated that he had not seen the email prior to his reply and thus was not aware Defendant had counsel until after the interrogation had finished. ECF No. 183 at 43. In light of this, Magistrate Judge Pederson concluded that there was no evidence that law enforcement had "intentionally interfered with the relationship between [Defendant] and his lawyer," citing to *United States v. Rommy*, 506 F.3d 108 (2d Cir. 2007). ECF No. 183 at 43.

Defendant objects that the reliance on *Rommy* was misplaced, as *Rommy* focused on whether law enforcement had deliberately elicited statements from a defendant post-indictment. ECF No. 188. Magistrate Judge Pederson did not assert that *Rommy* involved precisely the same factual circumstances as the present case, but rather cited it for the proposition that the Sixth Amendment protects against intentional interferences with the relationship between a person in custody and their attorney. ECF No. 183 at 43. Regardless, the Court is satisfied that it does not constitute a Sixth Amendment violation where, as here, law enforcement were unaware that Defendant had retained counsel until after an interrogation took place. *See, c.f., Moran v. Burbine*,

475 U.S. 412, 422 (1986) (finding no Sixth Amendment violation where police failed to inform defendant that counsel had, unknown to defendant, contacted law enforcement to ask to be present for interrogation).

Accordingly, the Court ADOPTS the recommendation and DENIES the motion to suppress Defendant's statements. Defendant's request for a hearing to discuss any factual disputes relating to this motion is also DENIED.

## CONCLUSION

For the foregoing reasons, the Court ADOPTS Magistrate Judge Pedersen's R&R (ECF No. 183). Defendant's motions to suppress evidence are DENIED, and his motion to suppress statements is DENIED.

IT IS SO ORDERED.

Dated: November 12, 2024
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York